IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANTOINE LAMONT SMITH, 1523849, )
       Petitioner, )
        )
v. ) No. 3:14-CV-3678-M
        )
WILLIAM STEPHENS, Director, TDCJ-CID, )
       Respondent. )

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 14, 2008, Petitioner was convicted of murder and was sentenced to life in prison. *State of Texas v. Antoine Lamont Smith*, No. F-05-55554-K (Crim. Dist. Ct. No. 4, Dallas County, Tex., Aug. 14, 2008).

On August 18, 2010, the Fifth District Court of Appeals affirmed the conviction and sentence. *Smith v. State*, No. 05-08-01115-CR (Tex. App. – Dallas 2010). On April 13, 2011, the Texas Court of Criminal Appeals denied Petitioner's petition for discretionary review.

On March 20, 2012, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Smith*, Application No. 77,897-01. On June 11, 2014, the Court of Appeals denied the petition.

On October 13, 2014, Petitioner filed this federal § 2254 petition. He argues:

1. He received ineffective assistance of trial and appellate counsel;

2. His conviction was the result of an unlawful search and seizure;

3. The prosecutor committed misconduct; and

4. He is actually innocent.

## II. Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> In the early morning hours of August 2, 2005, the victim, 19–year–old Miranda Wright, was shot in the head while driving her car. The events leading up to Wright's murder began late during the night of August 1, 2005, when Wright was at a gas station with her friends, including Brandon Skelton. At the gas station, Skelton got in a fight with Jeramie Dotsy and gunfire broke out. A few hours after the shootout at the gas station, Wright was driving alone in her car following her friends, including Skelton, who were in another car driving around looking for Dotsy. At the same time, Dotsy was driving around with his two friends, appellant and Devoia Jackson. Dotsy, Jackson, and appellant were in appellant's car and Dotsy was driving. When Dotsy spotted Wright's car, appellant shot at the car, hitting and killing Wright.
>
> The State's evidence at appellant's trial included the testimony of three eyewitnesses: (1) Destaney Dunn—Skelton's girlfriend, who was in the car with Skelton when Wright was killed; (2) Derisha Tyler—Dunn's friend, who was also in the car with Skelton when Wright was killed; and (3) Jackson—Dotsy's close friend, who was in the car with Dotsy and appellant when Wright was killed. On the night Wright was killed, Dunn had taken Xanax, hydrocodone, and promethazine; Tyler had drunk Crown Royal and taken Xanax; and Jackson was on morphine because he had been shot recently in an unrelated incident.
>
> Dunn gave a statement to police. She told police she saw Dotsy leaning out of the driver-seat window shooting, but she did not see who shot Wright. She did not tell police Skelton had a gun and was looking for Dotsy. At trial, she testified that she did not see who shot Wright. In Tyler's statement to police, she said Dotsy was driving appellant's car. At trial, Tyler testified that she could not see who was driving the car and that she saw Dotsy shooting out the back window behind the driver's seat.
>
> Jackson testified that he was with Dotsy at the gas station where the first shootout took place. When the shooting stopped, they left the gas station and Dotsy drove to his

mechanic's house to see if he could get his car's broken windows replaced, but the mechanic was not there. Dotsy called appellant and asked him to pick them up at the mechanic's house. Appellant arrived in his car and the group left in it and returned to the gas station where the earlier shootout had occurred. Dotsy was driving, Jackson was in the front passenger seat, and appellant was in the back seat behind Dotsy. Appellant had a gun in the car. They drove to a friend's house where they stayed a while. As they left the friend's house to go home, Dotsy saw Wright's car, pointed, and said "that's their car right there from the [gas station]." Appellant could not roll down his window because the child lock was engaged. Dotsy used the driver's controls to roll down appellant's window and appellant started shooting at Wright's car. Jackson testified that he was clear about what he saw, but when he was asked what he was thinking at the time of the shooting, he responded:

> I'm just—I'm really kind of like not really conscious because I'm on, I'm under intoxication. I was on morphine pills, you know, and I really don't know, you know—I really don't—I can't really just say because I was under, you know, under the influence, you know, of medication.

At the scene of Wright's murder, police recovered six or seven Winchester 9–millimeter Luger cartridges, two FC9–millimeter fired cartridges, and three bullet fragments.

Later on August 2 police located appellant's car at an apartment complex. They watched appellant leave an apartment, approach the car, and drive away. They pulled appellant over and saw a shell casing on the outside of the car lodged between the rear window and the trunk lid. They found a 9–millimeter shell casing in the back of appellant's car near the rear window, and separately bagged and tagged it for forensic analysis. A short time later, they searched the apartment that appellant had been seen leaving. Among the evidence seized during that search were a loaded Glock 9–millimeter pistol and a full box of Winchester 9–millimeter Luger cartridges.

Police did a DNA swab on the trigger guard and trigger of the 9–millimeter gun found at the apartment. They were not able to obtain fingerprints from the gun. Officer Scott Sayers also collected DNA from appellant and Dotsy using buccal swabs. Officer Sayers was new to the homicide unit at the time, so a senior detective supervised him taking the swabs. Officer Sayers testified in detail about the protocol police normally use for obtaining swabs and that he followed the correct procedures when taking the samples from appellant. According to a report from SWIFS, the laboratory that conducted the DNA testing in this case, the samples from appellant and Dotsy were submitted to SWIFS in June 2006, about 10 months after Wright was murdered.

Forensic scientists at SWIFS performed tests on four pieces of evidence that were submitted to SWIFS in August 2005 by officers who did not testify: a black gun and magazine, and a silver gun and magazine. The black gun and magazine contained a mixture of DNA from at least two contributors. The DNA from the major contributor

> matched appellant's DNA profile. The forensic biologist testified that the DNA match to appellant was very strong—1 in 1.41 trillion. She said that the population of the world is six billion, and she would "expect to go through 235 worlds in order to see this same DNA profile again." The other DNA on the gun did not correspond to the DNA profiles from Wright or Dotsy, but Wright and Dotsy could not be ruled out as minor contributors of the DNA found on the magazine. There was a 1 in 11 chance that Wright touched the magazine, and a 1 in 5 chance that Dotsy touched the magazine.
>
> The State's theory at trial was that appellant shot Wright. The trial court did not instruct the jury on the law of parties. Appellant did not testify during his trial, but his defensive theory, developed during cross-examination and closing argument, appeared to be that Skelton was the intended target and that Dotsy shot Wright.

*Smith v. State*, 2010 WL 3245438 *1-2.

### III.  Discussion

**1.     Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)     An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

## 2. Ineffective Assistance of Counsel

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. Fourth Amendment Claims

Petitioner claims trial counsel was ineffective because counsel failed to conduct a proper pretrial investigation on Petitioner's search and seizure claims and that appellate counsel was

ineffective for failing to raise his search and seizure claims on appeal.

The record shows officers located Petitioner at an apartment. (ECF No. 16-15 at 304-09.) After they saw Petitioner leave the apartment, officers conducted a welfare check and entered the apartment without a warrant to determine if anyone in the apartment needed assistance. (*Id*.) Officers stated they saw a firearm and drugs in plain view. Once officers determined no one in the apartment was in need of assistance, they exited the apartment without seizing any items. Officers then obtained a search warrant for the apartment. The officer who wrote the affidavit for the search warrant did not use any information from the warrantless search of the apartment to obtain the search warrant. (*Id*.) After obtaining the search warrant, officers seized the firearm and drugs.

Defense counsel filed a motion to suppress the evidence found at Petitioner's apartment. (Clerk's Record at 19-20, 28-30.) The trial court granted the motion finding there were no emergency circumstances to justify the warrantless entry into the apartment, and the later-obtained warrant affidavit lacked probable cause. (*Id*. at 38, 43-44.) The State appealed the court's order, and the appellate court reversed. The appellate court determined that the warrant affidavit sufficiently established probable cause for the warrant. (ECF No. 16-15 at 304-09.)

Petitioner claims trial counsel should have used photos of the apartment, and suppression hearing testimony of Officer Kaiser, to argue that evidence found during the warrantless search was not in plain view. This claim is without merit. After the trial court granted the motion to suppress, the appellate court found that regardless of the initial warrantless search, officers had a valid warrant when they searched and seized items from Petitioner's apartment. Petitioner has failed to show there is a reasonable probability that had counsel re-argued the suppression claims

in the trial court or on appeal, the appellate court would have changed its decision and would have granted the motion to suppress. These ineffective assistance of counsel claims should be denied.

### B. Impeach Witness

Petitioner claims trial counsel was ineffective because counsel failed to show that witness Devoia Jackson was biased against him because Petitioner had recently shot Jackson after Jackson provoked him. (Pet. Mem. at 14.) Petitioner, however, has failed to show his counsel was deficient when he failed to elicit testimony that Petitioner recently shot Jackson. Petitioner was on trial for shooting another person. Therefore, testimony that Petitioner had recently shot Jackson could have been highly prejudicial to Petitioner's case. Petitioner has failed to establish ineffective assistance of counsel.

### 3. Illegal Search and Seizure

Petitioner claims the court violated his due process rights when it admitted evidence from his apartment that he claims was obtained by an illegal search and seizure.

A federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue. *Stone v. Powell*, 428 U.S. 465, 493-95 (1976). This rule applies to both unlawful arrest claims and illegal search and seizure claims. *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005). The Fifth Circuit has held that "an opportunity for full and fair litigation" means just that – an opportunity. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant

employs those processes." *Id.*; *see also Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002). A habeas petitioner must plead and prove that the state court proceeding was inadequate in order to obtain post-conviction relief in federal court. *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986).

In this case, defense counsel filed a pre-trial motion to suppress. Although the trial court granted the motion, the appellate court reversed and remanded. The state court clearly provided Petitioner with the opportunity for a full and fair hearing on his Fourth Amendment issues. This claim is therefore barred from federal habeas review.

**4.     Prosecutorial Misconduct**

Petitioner claims the prosecutor committed misconduct when he knowingly sponsored untrue testimony at the suppression hearing. Petitioner states Officer Kaiser testified at the suppression hearing that during the warrantless search of Petitioner's apartment, a gun was found in plain view. Petitioner states that photographs of the apartment show the gun was under a comforter and was not in plain view.

Prosecutorial misconduct implicates due process concerns. *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). When a petitioner asserts a due process violation, the Court must determine whether the prosecutorial comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In this case, after the suppression hearing, the trial court granted Petitioner's motion to suppress. The appellate court determined that after the warrantless search, a search warrant was properly obtained, the evidence was properly seized and the trial court erred in suppressing the

evidence from Petitioner's apartment. Petitioner has failed to establish a violation of his due process rights.

**5.     Actual Innocence**

Petitioner claims he is actually innocent. A claim of actual innocence independent of constitutional infirmity at trial is not cognizable on habeas review. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1988). Further, to be credible, a claim of actual innocence must be based on reliable evidence *not* presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Thus, where a petitioner asserts his actual innocence of the crime, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. *Schlup*, 513 U.S. at 327.

On state habeas review, Petitioner claimed that an unsworn declaration from Jeramie Dotsy constituted new evidence of his actual innocence claim. In the declaration, Dotsy stated: "The truth of the matter is I committed this crime and [Petitioner] had nothing to do with it. . . ." (ECF No. 16-8 at 6-7.) The state trial court denied relief, finding Dotsy's statement was not credible. (ECF No. 16-11 at 193.) The Court of Criminal Appeals also denied relief. The court found that the trial court's decision to deny relief was supported by the record and that Dotsy was also convicted of the murder after pleading guilty pursuant to a plea agreement. (ECF No. 16-17 at 2.)

Petitioner has failed to show the state court's decision to deny relief was unreasonable or

that no reasonable juror would have convicted him in light of Dotsy's declaration. This claim should be denied.

**6.    Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**7.    Recommendation**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 4th day of December, 2015.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).